IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>*v.*<br><br>FRANK HUBBERT, *et al.* | Criminal Indictment<br><br>No. 1:25-CR-083-SEG-JKL |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION TO MODIFY PROTECTIVE ORDER**

The United States of America, by and through its attorneys, Richard S. Moultrie, Jr., the Acting United States Attorney for the Northern District of Georgia, Lauren E. Renaud, Assistant United States Attorney, hereby responds in opposition to defendants Jackson and Sheppard's *Motion to Modify Protective Order* regarding discovery in this case. (Doc. 63.) In support of its response, the United States sets forth as follows:

**A. Relevant Facts**

1.     On March 4, 2025, a grand jury sitting in the Northern District of Georgia returned an indictment charging the defendants—members and associates of a violent criminal enterprise known as GoodFellas—with Violent Crimes in Aid of Racketeering (VICAR) Attempted Murder and Aggravated Assault with a Deadly Weapon, Discharging a Firearm During a Crime of Violence, and Attempted Carjacking for their roles in three shootings. (Doc. 1.)

2.     On March 28, 2025, the Court granted the Government's motion for a protective order.  (Doc. 62.)  Based on the Government's assertion that "the enterprise charged in the indictment is characterized by violence and that release

of certain information could endanger the safety and security of witnesses and victims" the order requires, among other things, that all Sensitive Discoverable Materials, and any notes made by a defendant regarding Sensitive Discoverable Materials, be kept in the care, custody, and control of defense counsel. (*Id.*) Additionally, any review of Sensitive Discoverable Materials must occur in the office of defense counsel or at the detention facility where the defendant is housed with a member of the defense team present. (*Id.*)

3.     On March 28, 2025, counsel for two defendants currently detained in the underlying case filed a motion to modify the protective order. (Doc. 63.) The proposed modifications essentially boil down to leaving an electronic copy of the entirety of the Sensitive Discoverable Materials in the custody and control of the defendants' respective detention facilities so the defendants can access these materials outside of the presence of their attorneys. (Doc. 63.) Under this framework, defendants would have unsupervised access to data that contains information that could identify witnesses, victims, and other individuals who have provided information or statements about GoodFellas' gang activities, including statements on video from these individuals.

4.     As further explained below, granting the defendants unlimited access to the Sensitive Discoverable Materials would create enormous risk of dissemination of those materials to individuals inside and outside of prison. This would result in the: 1) intimidation of, or retaliation against, potential government witnesses and victims, and could place these individuals and other defendants at grave risk of serious injury or death; and 2) disruption of ongoing investigations into uncharged conduct and unindicted co-conspirators.

5.  The Government's concerns are premised on the innate characteristics of the enterprise, acts committed by members of GoodFellas, and the experiences of seasoned law enforcement officers involved in the investigation and prosecution of criminal street gangs and racketeering activity.

6.  First, as noted in the underlying indictment, GoodFellas members and associates have committed and aided and abetted acts involving murder, intimidation, and assault against GoodFellas members and associates who have violated, or were perceived to have violated, gang rules, and witnesses to illegal activities of the Enterprise. (Doc. 1 at 9.) The indictment charges as such. The basis of Count Seven, which five of the codefendants, including Defendants Sheppard and Jackson, are charged with, is the attempted murder of S.T., an individual that was targeted by GoodFellas based, in part, on their perception that S.T. had cooperated with or "snitched" to members of law enforcement.

7.  Due to GoodFellas' reach inside and outside of penal institutions, especially in the state of Georgia, cooperators, witnesses, and family members of cooperators and witnesses are targets for intimidation and violence.  Experienced law enforcement officers have learned that Sensitive Discoverable Materials in racketeering and gang cases are often used to harass, threaten, and retaliate against witnesses, potential witnesses, and their families.

8.  The Government has learned through its investigation that the GoodFellas gang is particularly adept at smuggling contraband into prisons and jails. Three members of GoodFellas were indicted in this district in case number 1:24-cr-11-LMM-RDC for their respective roles in a prison contraband smuggling scheme, two of which have pled guilty. Once in federal custody, in December 2024,

defendants in that case plus a GoodFellas defendant in another case were involved in an assault over a contraband phone at RADD. Separately, in late March 2025, in another case involving GoodFellas defendants charged in a Murder-for-Hire scheme, two defendants housed at RADD repeatedly posted on social media via contraband phones, including appearing in a photograph together despite being the subject of a separation order prohibiting contact between the two defendants.

9.      While the defendants charged in this case have not yet been found to have contraband while at RADD, they have only recently arrived in federal custody and their history indicates a high risk of possessing contraband, including phones which could be used to record discovery.

10.     Defendant Sheppard, for example, was transferred to federal custody from the custody of Fulton County, Georgia. On the day of his transfer, March 13, 2025, a contraband shank weapon was found underneath his mattress in his cell and, upon arrival to the federal courthouse, the United States Marshals Service (USMS) discovered he had contraband cigarettes smuggled in his underwear, despite having been previously searched by Fulton County prior to transport. The USMS ultimately conducted a strip search of defendant Sheppard. Previously, in May 2024, two contraband cell phones were found in his cell in Fulton County and on August 29, 2024, a shank weapon was recovered from his person.

11.     Defendant Jackson was also transferred to federal custody from the custody of Fulton County, Georgia. On the day of his transfer, March 13, 2025, suspected cocaine was found in his cell. Previously while in Fulton County custody, on March 16, 2023, a contraband cell phone was found in Defendant Jackson's cell; on September 17, 2024, he was administratively charged with

several others with smoking contraband cigarettes; and on October 1, 2024, a shank weapon was found under his cell bed mattress following a fight.

12.    On March 13, 2025, Defendant Frank Hubbert's cell at Dodge State Prison was searched and officials recovered a contraband cell phone, cell phone charger, and a roster of GoodFellas members.

## B.  Memorandum of Law

Federal Rule of Criminal Procedure 16(d)(1) provides, in pertinent part, that, "[a]t any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." Trial courts maintain significant flexibility in employing protective orders which restrict the use of materials produced in discovery. *See Alderman v. United States*, 394 U.S. 165, 185 (1969) ("[T]he trial court can and should, where appropriate, place a defendant and his counsel under enforceable orders against unwarranted disclosure of the materials which they may be entitled to inspect."). Defendants "have no right to extended independent review of [discovery] in the privacy of their cells." *United States v. Garcia*, 406 F. Supp. 2d 304, 306 (S.D.N.Y. 2005). *See also United States v. Salemme*, 978 F. Supp. 386, 389-90 (D. Mass. June 26, 1977) (limiting dissemination of discovery materials to certain authorized individuals).

Trial courts routinely tailor protective orders to limit the dissemination of discovery, to minimize the risks that dissemination of such information poses to the safety of potential witnesses.[1]  Indeed, "[i]t is appropriate . . . to employ Rule

---

[1]    *See, e.g., United States v. Dent*, No. SACR 16-00029(B)-CJC, 2017 WL 1025162, at *3-5 (C.D. Cal. Mar. 15, 2017) (declining to lift protective order preventing counsel from providing copies of discovery to defendant for defendant's retention where government showed that potential dissemination of such discovery posed a threat to witnesses and their families). *United States v. Mitchell*, No. 1:15-cr-00040-

16(d) protective orders to curtail the public dissemination of sensitive discovery materials that may endanger witnesses or informants." *United States v. Barbeito*, No. 2:09-cr-00222, 2009 U.S. Dist. LEXIS 102688, at *7-8 (S.D. W. Va. Oct. 30, 2009). *See also United States v. Scott*, No. 1:05-CR-443- 11, 2008 WL 4372814, at *1-2 (M.D. Pa. Sept. 19, 2008) ("[C]areful restriction on the use of [Jencks Act] material . . . warranted, considering the wide dissemination of [Jencks Act] materials within the prison system and the possibility that hard evidence of cooperation with the Government can facilitate witness intimidation or retaliation.").

When faced with a request to modify an existing protective order, courts have considered : "[(]1) the nature of the protective order[;] (2) the foreseeability, at the time of issuance of the order, of the modification requested[;] (3) the parties' reliance on the order; and most significantly (4) whether good cause exists for the

---

JAW-3, 2016 WL 7076991, at *1-4 (D. Me. Dec. 5, 2016) (issuing protective order preventing counsel from providing copies of discovery to defendant for defendant's retention, given concerns that such material could be disseminated by gang members and used to intimidate witnesses); *United States v. Johnson*, 191 F. Supp. 3d 363, 369-371 (M.D. Pa. May 11, 2016) (declining to rescind protective order in part to protect cooperating witnesses and confidential investigative techniques); *United States v. Cordova*, 806 F.3d 1085, 1090-91 (D.C. Cir. 2015) (defendant suffered no prejudice from the district court's protective order precluding defendant from possessing copies of Jencks material when defendant was allowed advanced receipt of, and defense counsel had full access to, the Jencks material); *United States v. Palmer*, No. 10 Cr. 910(JSR), 2011 WL 672412, at *1 (S.D.N.Y. Feb. 14, 2011) ("[Jencks material] is often copied, passed around prisons throughout the country, and used to retaliate against cooperators.") (citations omitted); *United States v. Guerrero*, No. 09 CR 339, 2010 WL 1506548, at *13 (S.D.N.Y. Apr. 14, 2010) (precluding defendant from possessing any Jencks material in any jail facility except that defendant may review Jencks material in the possession of defense counsel and in the presence of defense counsel in order to protect government witnesses).

modification." *United States v. Londono*, No. 10-20763-1-CR, 2019 WL 11216999, at *2 (S.D. Fla. Aug. 28, 2019) (quoting *United States v. Morales*, 807 F.3d 717, 723 (5th Cir. 2015) (internal cites omitted). "Good cause is the most important of these factors…" *Morales*, 807 F.3d at 723.

Here, the first and fourth factors weigh strongly against modification.  The protective order, and in particular the Government's designation of materials pursuant to it, is narrowly tailored to the Government's safety and security concerns.  This case does not present the same volume concerns that the cases cited by defense counsel presented. The Gangster Disciples and Sex Money Murder prosecutions included wiretap evidence which can involve hundreds, if not thousands, of hours of evidence. Here, the only evidence the Government has currently designated Sensitive Discoverable Material is body camera footage, including video that shows witnesses and victims on camera discussing events relevant to the case and providing their personally identifiable information, including contact information. There are approximately 63 such currently designated videos total for this case, and not all videos relate to all the charges and therefore are not relevant to all defendants. Additionally, approximately 11 of those videos relate to a shooting that is not charged in this indictment.  For defendants Jackson, Sheppard, and Marshall, that amounts to approximately 52 videos related to the shootings they are charged with. For defendant Nelson-George, there are approximately three videos related to the shooting he is charged with. For defendant Jones, there are approximately 41 videos that relate to the shooting he is charged with. For defendants Carson and Rankine, there are

approximately 11 videos for the shootings they are charged with. For defendant Hubbert, there are approximately 44 videos for the shootings he is charged with.

Moreover, any good cause to modify the protective order in the manner sought via the defendants' motion is outweighed by the risk the Defendants would use the Sensitive Discoverable Materials to intimidate or retaliate against potential government witnesses and cooperators, engage in fraud/bribery, and disrupt ongoing investigations into uncharged conduct and unindicted co-conspirators.

Despite these grave safety concerns, counsel for the defendants allege a modification of the protection order is necessary due to the voluminous nature of the discovery and to limit the time they would otherwise devote to reviewing the Sensitive Discoverable Materials with their clients at their respective detention facilities. While long waits for visits at RADD are concerning, this is mitigated by the current order's allowance for anyone associated with the defense team, including paralegals and other support staff, to supervise discovery review.

Nor are the proposed measures sufficient to protect against the concerns. Even if the Defendants are patted down by RADD personnel, Defendant Sheppard's recent cigarette smuggling into federal custody shows the lengths he is willing to go to hide contraband and the insufficiency of a general pat down. Furthermore, other individuals who are not subject to the Court's procedures could leave phones in the law library for the defendants to use to record the discovery as they view it. The proposed measures would also enable defendants to view the Sensitive Discoverable Material together, which increases security concerns by enabling defendants to discuss how to retaliate or respond. The proposed measures also do not account for the fact that not all defendants are

8

charged with the same shootings and therefore placing one copy of Sensitive Discoverable Material in the law library would enable defendants to view videos of victims and witnesses that they are not entitled to see under the rules of discovery at this stage of the case, thereby needlessly exposing those victims and witnesses.

Finally, the Government has additional information regarding the need in this specific case for the current protective order that cannot be filed publicly. If the Court deems it necessary and is inclined to grant the motion, we ask for the opportunity to be heard in chambers or with a supplemental filing.

### C. Conclusion

Defendants' motion to modify the protective order and allow the defendants the ability to review a full copy of all discoverable materials in their respective detention facility absent the presence of a member of their defense team should be denied.

Submitted this 11th day of April, 2025.

Respectfully submitted,

RICHARD S. MOULTRIE, JR.
  *Acting United States Attorney*

/s/ LAUREN E. RENAUD
  *Assistant United States Attorney*
DC Bar No. 1672511
Georgia Bar Pending
Lauren.Renaud@usdoj.gov

9